IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Ryan M. Irwin, | : | |
|     Plaintiff | : | Civil Action 2:09-cv-256 |
| v. | : | Judge Holschuh |
| Michael J. Astrue,<br>Commissioner of Social Security, | : | Magistrate Judge Abel |
|     Defendant | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Ryan M. Irwin brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits. This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Irwin maintains that he is disabled due to a brain tumor, gamma knife surgery and seizures. (R. 61.) The administrative law judge found that Irwin could not perform his previous work as a general production helper, but found that he retains the ability to perform a reduced range of light work. (R. 12–24.)

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge overstated Irwin's ability to use his dominant right arm for reaching, handling, and fingering.

- The administrative law judge did not understand the consequences of Irwin's specific brain condition (Hydrocephalus with shunt valves).

- The administrative law judge did not understand his seizure disorder.

- The administrative law judge erroneously applied the substantial evidence standard instead of the preponderance of the evidence burden of proof.

**Procedural History.** Plaintiff filed his application for disability insurance benefits on June 17, 2005, alleging that he became disabled on October 30, 2004, at age 24. (R. 49-53.) The applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On July 8, 2008, Administrative Law Judge Amelia G. Lombardo held a hearing which plaintiff, represent-ed by counsel, appeared and testified. (R. 302-43.) On September 4, 2008, administrative law judge Lombardo issued a decision finding that Irwin was not disabled within the meaning of the Act. (R. 12-24.) On January 29, 2009, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 5-7.)

**Age, Education, and Work Experience.** Plaintiff Irwin was born July 5, 1980. (R. 22.) He was 28 years old at the time of the administrative hearing. He has a limited education, completing the 10th grade. (R. 66.) He had past work experience as a general production helper. (R. 62.)

**Plaintiff's Testimony.** The administrative law judge summarized Irwin's testimony as follows:

> Claimant testified he is 71 inches tall and weighs approximately 185 pounds. He is not married and has two children. He lives with his father. He has a driver's license but does not drive due to problems with his right side. Claimant testified he went to school through the tenth grade and does not have trouble reading and writing. He began working part-time at

a fast food restaurant at the end of 2007. He works approximately 15-20
hours per week.

Claimant describes his impairments as memory loss, right side problems
that occurred after his second brain surgery, headaches and neck pain.
Claimant testified he cannot walk more than three to four blocks and can
stand for only 15-20 minutes. He testified that with his right arm he can-
not grab things and can only lift 5-10 pounds. With both arms, claimant
testified, he could lift 20-25 pounds. He further testified he cannot climb
stairs. He takes Tegretol to prevent seizures. He testified the Tegretol
causes him some drowsiness, lightheadedness and upset stomach. Claim-
ant sees his doctor in Cleveland once per year. He is not currently being
treated by any other physicians.
. . .
Claimant testified . . . he can cook simple things, make beds and vacuum.

(R. 14, 17.)

**Medical Evidence of Record.** Irwin does not challenge the administrative law judge's assessment of his mental impairments. The relevant medical evidence of record pertaining to Irwin's physical abilities is summarized as follows:

<u>Robert Maciunas, M.D., M.P.H., FACS</u> Irwin initially presented with a longstanding history of headaches which became acutely worse in 2000. (R. 282.) He underwent a craniotomy for a radical subtotal resection of a central neurocytoma. (*Id.*, R. 252) In January 2001, Irwin underwent a second craniotomy for further resection. *Id.* Irwin had an intraventricular tumor treated with gamma knife therapy in August, 2001. (*Id.*, 226.)

By December 5, 2003, Irwin underwent a third craniotomy for a gross total resection of the solid tumor tissue component of his cystic neurocytoma. (R. 235-45.)

In April 2006, Irwin's clinical and radiographic findings were consistent with progressive cystic fluid. (R. 222.) In July, Irwin had two shunts placed in his head to address hydrocephalus. (R. 258-62, 282.) Postoperatively, Irwin was doing well without complications. (R. 258.) Nevertheless, Irwin was hospitalized twice after the shunt placement due to headaches. (R. 263-79.) The shunts were adjusted and by August 2, 2006, Irwin noted resolution of his headaches. (R. 267.) X-rays of Irwin's skull in December, 2006, showed a stable appearance of his shunt catheters, without evidence of shunt tubing disruption. (R. 280.) A CT of Irwin's head taken the same day showed a slight decrease in ventricular volume, but was otherwise stable. (R. 281.)

In December 2006, Dr. Maciunas reported that Irwin continued to be on "temporary total disability." (R. 220.) In February 2007, Dr. Maciunas reported that Irwin had weakness in his right side which required physical therapy, and that he was "temporary total disabled." (R. 219.)

In September 2007, Dr. Maciunas examined Irwin and noted that he had 4+/5 strength in his right arm and that his right leg partial paralysis was improved, with a broad based and unsteady gait. (R. 282-83.) Dr. Maciunas also reported that Irwin's rapid alternating movements were diminished on his right side. *Id.* Dr. Maciunas opined,

> My neurosurgical impression is that of an excellent result, both clinically and radiographically, after multiple surgical procedures for a central neurocytoma associated with in-

> traventricular cyst formation and secondary obstructive hydrocephalus. The patient's clinical examination is better than I have witnessed to be at any time during my experience caring for this gentleman. He has had no seizures. He is taking tegretol medication at this time.

*Id.*

<u>Douglas Einstein, M.D., Ph.D.</u>  Oncologist, Dr. Einstein reported in February 2004, that "there is significantly improved right arm strength, as well as right leg strength with a much decreased right foot drop." (R. 173.) Dr. Einstein also reported that Irwin "was able to perform rapid alternating finger movements without difficulty." *Id.* Irwin indicated that his balance was improving, and he was taking Tegretol. (R. 173-74.)

On June 18, 2004, Irwin reported to Dr. Einstein that he was making significant improvement with his right-sided weakness, and he denied headaches, nausea, vomiting or seizures. (R. 170.) Dr. Einstein found almost full strength in Irwin's right arm and leg, as well as a "much improved gait with patient now able to walk heel-to-toe." *Id.* Irwin reported balance problems and right arm tingling in the morning hours. (R. 172.)

Irwin underwent an MRI of his brain in September 2004, due to complaints of dizziness, lightheadedness and weakness in his right arm and leg. (R. 158-59.) The MRI showed decreased size of enhancing lesion in the posterior medial aspect of the left frontal lobe since the previous studies and decreased lesion at the posterior aspect of the surgical tract. *Id.*

In December 2004, Dr. Einstein reported that Irwin was "clinically stable with unchanged occasional right footdrop and right hand weakness. He denies any headaches, nausea, vomiting or seizures." (R. 169.) Dr. Einstein also set forth that Irwin had almost full strength in his right arm and leg, with an "unchanged gait with right footdrop." *Id.*

In April 2006, Irwin complained of worsening right side weakness, but again denied headaches, nausea, vomiting and seizures. (R. 222.) He had +3/5 strength in his right arm and 4/5 strength in his right leg, with an unsteady gait. *Id.*

In July 2006, an MRI of Irwin's cervical spine revealed mild degenerative changes including a small disc herniation at C4-C5. (R. 278.)

In September 2007, Dr. Einstein completed a residual functional capacity questionnaire based on Irwin's brain tumor disorder. (R. 212-17.) Dr. Einstein reported he saw Irwin for follow-up visits and monitored him through MRIs. *Id.* Irwin's symptoms include balance problems; occasional headaches; poor co-ordination; loss of manual dexterity, due to occasional right hand weakness; and 4/5 weakness in the right arm and right foot drop. *Id.* Dr. Einstein opined that Irwin could sit for at least six hours and for more than two hours at a time; could stand for thirty minutes at a time; needed a sit/stand option; could frequently lift up to ten pounds; could occasionally twist and climb stairs; and could rarely stoop, crouch or climb ladders. *Id.* Dr. Einstein further opined that Irwin had

6

significant limitations in his ability to reach, handle or finger due to right arm weakness. *Id.* Dr. Einstein opined that Irwin should not be exposed to cigarette smoke and should avoid concentrated exposure to solvents/cleaners, chemicals, soldering fluxes, fumes, odors, dusts, and gases. *Id.* He felt that Irwin was capable of low stress jobs and might miss about one day of work a month. *Id.*

<u>Lynette M. Yoakum, OTR/L</u> Irwin attended occupational therapy from January 28, 2004 through June 15, 2004 due to decreased strength and coordination in his right hand. (R. 134-56.) Irwin made steady improvements. *Id.* He reported he was lifting weights and mowing his lawn. *Id.* During the course of his occupational therapy, it was reported that Irwin improved his grip strength, improved his coordination and could tolerate 45-60 minutes of therapy. *Id.*

<u>William D. Padamadan, M.D.</u> In September 2005, state agency physician, Dr. Padamadan examined Irwin. (R. 179- 85.) Dr. Padamadan reported that Irwin had "subtle weakness on his right lower extremity. His ambulation was almost near normal, but on close inspection one could see that he had somewhat of a high stepping gait and he had a slight foot drop." *Id.* Dr. Padamadan found no deficits with Irwin's right arm. *Id.* Dr. Padamadan concluded that there were no objective signs of any functional impairment. *Id.*

**Administrative Law Judge's Findings.** The administrative law judge found that:

1. The claimant meets the insured status requirements of the Social

7

Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since October 30, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: status post brain surgery, borderline intellectual functioning and anxiety disorder (20 CFR 404.1520 (c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following additional limitations: sitting for 4 hours; standing and walking for 4 hours; no unprotected heights or hazards; no constant handling with the right upper extremity; simple repetitive work with no "assembly line" production quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 5, 1980. From the alleged disability onset date to the present the claimant has been between 24 and 28 years old, which is defined as a "younger individual" (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2004 through the date of this decision (20 CFR 404.1520(g).

(R. 14-23.) (citation to record omitted).

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge errered in her evaluation of treating physician, Dr. Einstein's opinions especially

as to Irwin's reaching, fingering, stooping and environmental restrictions. Irwin further argues that the administrative law judge applied an incorrect burden of proof.

**Analysis.** Treating Doctor: Legal Standard. A treating doctor's opinion on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). The treating doctor has had the opportunity to observe his patient's impairments over the course of time.

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. § 423 (d) (1) (A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975), 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b),

and 404.1527.

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. *Id.* Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Consequently, the decision-maker must have "an understanding of the clinical signs

11

and laboratory findings and what they signify." *Id.* When the treating source's opinion "is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ." The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion. When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's [opinion] more weight than we would give it if it were from a non-treating source." 20 C.F.R. §404.1527(d)(2)(I).

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The case law is consistent with the principals set out in Social Security Ruling 96-2p. A broad conclusory statement of a treating physician that his patient is disabled is not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). The Commissioner must make the final decision on the ultimate issue of disability. *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

<u>Treating Doctor: Discussion.</u>  Irwin contends the administrative law judge should have accorded controlling weight to the opinion of Dr. Einstein, his treat-

ing oncologist, in determining plaintiff's RFC. As discussed above, Dr. Einstein limited Irwin's functional ability to rarely lifting ten pounds and standing for no more than 30 minutes at a time. (R. 215.) Dr. Einstein further indicated that Irwin should avoid concentrated exposure to fumes, odors, dusts, soldering fluxes, solvents, cleaners and chemicals. (R. 216.) He also said Irwin would be absent from work approximately one day per month. (R. 217.) After correctly describing the legal standards applicable under the treating physician rule and also correctly describing the additional regulatory factors that apply to treating physicians and other medical sources under 20 C.F.R. §§404.1527(d) and (f). The administrative law judge weighed Dr. Einstein, along with Irwin's other treating neurosurgeon, Dr. Maciunas' assessments as follows:

When analyzed under these guidelines, Dr. Maciunas and Dr. Einstein's conclusions cannot be given controlling, or even deferential, weight. Such conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record. The only plausible explanation for their pessimistic assessments of claimant's functional capabilities is that such assessments were based on an uncritical acceptance of claimant's subjective complaints and allegations. For Social Security purposes, an impairment must be established, not only by a claimant's statement of symptoms, but by medical evidence consisting of signs, symptoms, and laboratory findings, (20 CFR 404.1508). The claimant undoubtedly has some functional limitations associated with both his physical and mental impairments, but the weight of the evidence of record does not establish that such impairments would limit claimant to being totally disabled, as indicated by Dr. Maciunas.

(R. 19-20.)

The Regulations require controlling weight to a treating physician's op-

inion only when it is both well supported by medically acceptable evidence and not inconsistent with other substantial evidence of record. *Blakley v. Comm'r of Soc. Sec.*, No. 08-6270, 2009 WL 3029653, at *9 (6th Cir. Sept. 24, 2009) , citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §416.927(d)(2). Because the administrative law judge applied these factors Dr. Einstein and Dr. Maciunas' opinions, the administrative law judge did not err as a matter of law in declining to give controlling weight to their opinions. The opinion of Dr. Einstein itself does not establish disability even if there is no rebutting opinion.

Irwin argues that administrative law judge should have adopted Dr. Einstein's more specific right arm restrictions, reaching and fingering limitations, stooping restrictions and environmental limitations. The administrative law judge specifically noted that, "the evidence of record does not support Dr. Einstein's opinion that claimant can only lift ten pounds rarely or needs to avoid exposure to fumes, odors, dusts, soldering fluxes, solvents, cleaners and chemicals. The evidence also does not demonstrate claimant would be absent from work approximately one day per month or that claimant can only stand for 30 minutes." (R. 20.) The administrative law judge properly relied upon substantial evidence in determining Irwin's residual functional capacity. Irwin testified that he can lift, with both arms, approximately 20-25 pounds. (R. 314-15.) He further

15

testified he works at a fast food restaurant 5-6 hours per day, four days per week, where he uses the front register, mops, sweeps, takes out the trash and is on his feet without the use of an ambulatory aid. (R. 330-31.) In addition, Irwin testified he can make beds, cook simple things and can dress, bathe and feed himself. (R. 315-17.) The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the administrative law judge when cases are decided at an administrative hearing. *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; §404.1527(e)(2)].

Irwin also argues that the administrative law judge erroneously applied the substantial evidence standard instead of the preponderance of the evidence burden of proof. Plaintiff is correct that the administrative law judge referred to " substantial evidence" in her decision twelve times. *See* R. 17 -19 and 22. Even assuming that the administrative law judge applied the substantial evidence standard of review, the administrative law judge did not commit reversible error. "Substantial evidence" is a lesser burden that a preponderance of the evidence standard of review. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)("Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

From a review of the record as a whole, I conclude that there is substantial

evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. See 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel  
United States Magistrate Judge
