IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ryan M. Irwin,                                    :
                    Plaintiff              :        Civil Action 2:09-cv-256

        v.                                         :        Judge Holschuh

Michael J. Astrue,                                :        Magistrate Judge Abel
Commissioner of Social Security,
                    Defendant              :

**ORDER**

This matter is before the Court on plaintiff Ryan M. Irwin's December 10, 2009

objections to Magistrate Judge Abel's November 20, 2009 Report and Recommendation

that the decision of the Commissioner denying Social Security disability benefits be

affirmed. The Court, having reviewed the record *de novo*, determines that there is

substantial evidence supporting the administrative law judge's determination that

plaintiff Irwin is not disabled within the meaning of the Act.  The Court further finds

for the reasons set out below that plaintiff's objections to the Report and

Recommendation are without merit.

Plaintiff Irwin alleges he became disabled at age 24 by a brain tumor, gamma

knife surgery and seizures. Between 2000 and 2003, Irwin underwent three craniotomies

to surgically remove a brain tumor. In 2006, he had two shunts placed in his head to

address hydrocephalus. He was 28 years old at the time of the hearing before the

administrative law judge. He has a tenth grade education. He had worked as a general

production helper.

Although the administrative law judge found that Irwin could not perform his previous work, he concluded that he retained the ability to perform a reduced range of work having light exertional demands. The specific restrictions he found were that Irwin could sit and stand/walk only 4 hours; he could not work on unprotected heights or hazards; he could not constantly handle with the right upper extremity; and he could perform only simple repetitive work with no "assembly line" production quotas.

Plaintiff argues that there is not substantial evidence supporting the decision denying benefits because:

- The administrative law judge did not properly evaluate the opinion of Irwin's treating oncologist, Dr. Einstein, that he could rarely stoop.

- There is not substantial evidence supporting the administrative law judge's finding that Irwin can work without any environmental limitations.

- The administrative law judge did not address Dr. Einstein's conclusion that Irwin cannot use his right hand to reach, handle, and finger.

Each of these arguments will be considered separately below.

Medical evidence. Lynette M. Yoakum, who performed occupational therapy for Irwin's decreased strength and coordination in his right hand during the first half of 2004, reported that Irwin made steady improvements. He was lifting weights and mowing his lawn. During the occupational therapy, his grip strength and coordination improved. (R. 134-56.)

In September 2007, Robert Maciunas, M.D., M.P.H., FACS, a long-time treating neurosurgeon reported that motor, sensory and deep tendon examination of the upper right extremity was 4+ out of 5. (R. 283.) Dr. Maciunas concluded that the surgeries had been successful:

> My neurosurgical impression is that of an excellent result, both clinically and radiographically, after multiple surgical procedures for a central neurocytoma associated with in-traventricular cyst formation and secondary obstructive hydrocephalus. The patient's clinical examination is better than I have witnessed to be at any time during my experience caring for this gentleman. He has had no seizures. He is taking tegretol medication at this time.

*Id.*

Dr. William D. Padamadan, who performed a disability examination for the state agency in September 2005, reported that Irwin had "no clinically significant atrophy or decrease in RANGE OF MOTION" in his upper right extremity. (R. 181.) His coordination in the right upper extremity was normal. His grip strength was excellent. Finger movements were normal. Overall muscle strength in the upper extremities was normal. His coordination was normal. There was no clinically significant decrease in muscle strength in the lower extremities. *Id.*

Dr. Padamadan concluded that Irwin's abilities to reach, handle, and make fine and gross movements were intact. His diagnostic impression was status post brain tumor surgery "with subtle weakness on his right lower extremity with a foot drop." (R. 181.)

The November 20, 2009 Report and Recommendation fairly summarizes the

medical evidence from Dr. Einstein:

> Douglas Einstein, M.D., Ph.D.  Oncologist, Dr. Einstein reported in February 2004, that "there is significantly improved right arm strength, as well as right leg strength with a much decreased right foot drop." (R. 173.) Dr. Einstein also reported that Irwin "was able to perform rapid alternating finger movements without difficulty." *Id.* Irwin indicated that his balance was improving, and he was taking Tegretol. (R. 173-74.)
> On June 18, 2004, Irwin reported to Dr. Einstein that he was making significant improvement with his right-sided weakness, and he denied headaches, nausea, vomiting or seizures.  (R. 170.) Dr. Einstein found almost full strength in Irwin's right arm and leg, as well as a "much improved gait with patient now able to walk heel-to-toe." *Id.*  Irwin reported balance problems and right arm tingling in the morning hours. (R. 172.)
> Irwin underwent an MRI of his brain in September 2004, due to complaints of dizziness, lightheadedness and weakness in his right arm and leg. (R. 158-59.) The MRI showed decreased size of enhancing lesion in the posterior medial aspect of the left frontal lobe since the previous studies and decreased lesion at the posterior aspect of the surgical tract. *Id.*
> In December 2004, Dr. Einstein reported that Irwin was "clinically stable with unchanged occasional right footdrop and right hand weakness.  He denies any headaches, nausea, vomiting or seizures." (R. 169.)  Dr. Einstein also set forth that Irwin had almost full strength in his right arm and leg, with an "unchanged gait with right footdrop." *Id.*
> In April 2006, Irwin complained of worsening right side weakness, but again denied headaches, nausea, vomiting and seizures. (R. 222.)  He had +3/5 strength in his right arm and 4/5 strength in his right leg, with an unsteady gait.  *Id.*
> In July 2006, an MRI of Irwin's cervical spine revealed mild degenerative changes including a small disc herniation at C4-C5. (R. 278.)
> In September 2007 , Dr. Einstein completed a residual functional capacity questionnaire based on Irwin's brain tumor disorder. (R. 212-17.) Dr. Einstein reported he saw Irwin for follow-up visits and monitored him through MRIs. *Id.*  Irwin's symptoms include balance problems; occasional headaches; poor coordination; loss of manual dexterity, due to occasional right hand weakness; and 4/5 weakness in the right arm and right foot drop. *Id.* Dr. Einstein opined that Irwin could sit for at least six hours and for more than two hours at a time; could stand for thirty minutes at a time;

needed a sit/stand option; could frequently lift up to ten pounds; could occasionally twist and climb stairs; and could rarely stoop, crouch or climb ladders. *Id.* Dr. Einstein further opined that Irwin had significant limitations in his ability to reach, handle or finger due to right arm weakness. *Id.* Dr. Einstein opined that Irwin should not be exposed to cigarette smoke and should avoid concentrated exposure to solvents/cleaners, chemicals, soldering fluxes, fumes, odors, dusts, and gases. *Id.* He felt that Irwin was capable of low stress jobs and might miss about one day of work a month. *Id.*

Doc. 15, at pp. 5-7.

The administrative law judge refused to fully credit Dr. Einstein's opinion on

Irwin's residual functional capacity:

> When analyzed under these guidelines, Dr. Maciunas and Dr. Einstein's conclusions cannot be given controlling, or even deferential, weight. Such conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record. The only plausible explanation for their pessimistic assessments of claimant's functional capabilities is that such assessments were based on an uncritical acceptance of claimant's subjective complaints and allegations. For Social Security purposes, an impairment must be established, not only by a claimant's statement of symptoms, but by medical evidence consisting of signs, symptoms, and laboratory findings, (20 C.F.R. § 404.1508). The claimant undoubtedly has some functional limitations associated with both his physical and mental impairments, but the weight of the evidence of record does not establish that such impairments would limit claimant to being totally disabled, as indicated by Dr. Maciunas.

(R. 19-20.) The Report and Recommendation found that there was substantial evidence

supporting the administrative law judge's residual functional capacity findings:

> The administrative law judge specifically noted that, "the evidence of record does not support Dr. Einstein's opinion that claimant can only lift ten pounds rarely or needs to avoid exposure to fumes, odors, dusts,

5

soldering fluxes, solvents, cleaners and chemicals. The evidence also does not demonstrate claimant would be absent from work approximately one day per month or that claimant can only stand for 30 minutes." (R. 20.) The administrative law judge properly relied upon substantial evidence in determining Irwin's residual functional capacity. Irwin testified that he can lift, with both arms, approximately 20-25 pounds. (R. 314-15.) He further testified he works at a fast food restaurant 5-6 hours per day, four days per week, where he uses the front register, mops, sweeps, takes out the trash and is on his feet without the use of an ambulatory aid. (R. 330-31.) In addition, Irwin testified he can make beds, cook simple things and can dress, bathe and feed himself. (R . 315-17.) The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the administrative law judge when cases are decided at an administrative hearing. *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; §404.1527(e)(2)].

Doc. 15, at pp. 15-16.

As set out at page 2 above, plaintiff argues that: there is not substantial evidence supporting the administrative law judge's rejection of Dr. Einstein's opinions that Irwin can rarely stoop; that there is not substantial evidence supporting the administrative law judge's finding that Irwin can work without environmental limitations; and that the administrative law judge failed to address Dr. Einstein's opinion that Irwin cannot use his right hand to reach, handle and finger. For the reasons that follow, the Court concludes that none of these arguments requires reversal of the Commissioner's decision denying benefits.

Ability to stoop. Dr. Einstein's diagnosis was central neurocytoma with a stable prognosis. He said that Irwin's symptoms included balance problems, poor coordination, occasional right hand weakness, and 4/5 weakness in the upper and

lower right extremities. (R. 212.) He stated the opinion that Irwin could stoop only rarely. (R. 215.) He offered no explanation for the restriction. On the other hand, no other physicians so limited Irwin.

Plaintiff argues that Dr. Einstein likely found the stooping limitation based on Irwin's hydrocephalus, fluid build-up in the brain. However, Dr. Einstein did not advance that as a reason for the limitation. He gave no reason. And the record indicates that the two shunt valves apparently controlled the fluid levels in Irwin's brain. Given Dr. Einstein's failure to specify a reason for the limitation and the absence of any evidence in the record supporting it, the Court cannot say that the administrative law judge erred in refusing to accept Dr. Einstein's opinion that Irwin should only rarely stoop.

Environmental limitations. Dr. Einstein reported that Irwin could not work jobs that involved concentrated exposure to fumes, odors, dusts, gases, soldering fluxes, solvents, cleaner, and chemicals or any exposure to cigarette smoke. (R. 216.) The administrative law judge rejected the opinion because it was unsupported by the record. Plaintiff argues that exposure to toxins can precipitate seizures. However, as defendant argues, Dr. Einstein did not state that the limitation was based on Irwin's seizures, and those seizures are controlled by medication. Accordingly, the Court cannot say that the administrative law judge erred in refusing to accept Dr. Einstein's opinion that Irwin had these environmental restrictions.

Ability to reach, handle and finger with the right hand. Dr. Einstein found that Irwin had significant limitations in his ability to reach, handle or finger due to right hand/arm weakness. (R. 215.) Plaintiff argues that the administrative law judge erred when he failed to address that opinion. Defendant responds that Dr. Einstein only said that Irwin could reach and finger as much as he was able, given his occasional right hand weakness. (R. 212 and 215.) No other doctor found job-related limitations to Irwin's use of his right hand greater than those found by the administrative law judge. The reports by Lynette M. Oakum, Dr. Robert Maciunas, and Dr. William D. Padamadan support the limitations found by the administrative law judge. Further, as the administrative law judge noted, Irwin was working part-time at the time of the administrative hearing, and his job duties included using a cash register, mopping, sweeping and taking out the trash.

Having reviewed the record, the Court cannot say that the administrative law judge erred in finding that Irwin could use his right hand and arm for reaching, handling and fingering but not for constant handling.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation. Plaintiff's motion for summary judgment is **DENIED.** Defendant's motion for summary judgment is **GRANTED.** The decision of the Commissioner is **AFFIRMED.** The Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant. This action is hereby **DISMISSED.**

8

Date: March 31, 2010                    **/s/ John D. Holschuh**
                                        John D. Holschuh
                                        United States District Judge